IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>RAPID THERAPEUTIC SCIENCE<br>LABORATORIES, INC. and<br>DONAL R. SCHMIDT, JR.,<br><br>　　　　　　　　　Defendants. | Civil Action No.  3:23-cv-2081<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC") files this Complaint against Defendants Rapid Therapeutic Science Laboratories, Inc. ("Rapid," "RTSL," or the "Company") and Donal R. Schmidt, Jr. ("Schmidt") (collectively, "Defendants"), and alleges as follows:

## SUMMARY

1.　　Rapid is a publicly traded company that manufactures and sells inhaler devices containing cannabidiol ("CBD"), a substance derived from the hemp plant. From April 2020 through May 2023, Rapid's CEO, Schmidt, drafted, disseminated, and/or filed press releases, investor communications, SEC filings, and website posts containing materially false and misleading claims intended to deceive Rapid's investors regarding the Company's business.

2.　　The materially false and misleading information authored and/or approved by Schmidt included that: (1) Rapid had obtained an industrywide certification relating to manufacturing and product safety; (2) Rapid had secured major sales contracts; (3) Rapid had a laboratory that met international standards; (4) Rapid's chief science officer ("CSO") was an

engineer who held bachelor's and doctoral degrees; (5) Rapid's inhalers were safe and legal; and (6) Rapid's stock listing application had been approved by Nasdaq.

3. From February 2020 through May 2021, Rapid raised at least $2.1 million from 51 investors in 15 states in unregistered securities transactions. During that same period, Schmidt also sold Rapid stock that he personally owned, receiving approximately $1.15 million.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action under Sections 20(b), 20(d), and 22 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v] and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]. Defendants directly or indirectly made use of means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

5. Venue in this district is proper under Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts, practices, transactions, and courses of business constituting the violations alleged herein occurred within this district.

## DEFENDANTS

6. **Rapid** is a Nevada corporation with its principal place of business in Dallas, Texas. Rapid's common stock is registered with the Commission under Exchange Act Section 12(g) and Rapid files periodic reports with the SEC. Rapid's stock trades under the ticker symbol RTSL on OTC Link, a subsidiary of OTC Markets Group Inc.

7. **Schmidt**, who resides in Dallas, Texas, is Rapid's CEO, president, and board chairman. He is a licensed attorney and CPA in Texas.

# FACTS

## Rapid's Background

8. In approximately 2018, Schmidt met an individual seeking to develop and market a multi-dose inhaler ("inhaler" or "MDI") to deliver CBD. The two soon began making plans to start a CBD-inhaler business. In a December 2019 reverse-merger transaction, Schmidt used a private entity that he controlled to acquire a majority interest in an SEC-reporting company whose common stock traded on OTC Link. Following the merger, Schmidt changed the company's name and its business operations to form Rapid. Since December 2019, Schmidt—Rapid's CEO, president, and board chairman—has exercised complete control over the Company's operations and its public statements.

## Rapid and Schmidt Made Numerous False and Misleading Statements Regarding the Company's Business

### *Industrywide Certification*

9. In an April 16, 2020 press release, an SEC Form 10-K filed on June 29, 2020, and an SEC Form 10-K/A filed on August 27, 2020, all authored and/or approved by Schmidt, Rapid stated, "RTSL is certified by the Cannabinoid MDI Certification Board (CMDICB) with respect to manufacturing of its MDI." In November 2020, Schmidt disseminated a "Corporate Overview" to investors, stating, "RTSL is certified by CMDICB (http://cmdicb.com/) for product safety."

10. Rapid subsequently elaborated on and defined CMDICB in its SEC filings. In its March 16, 2021 Form 10-KT filed with the SEC, Rapid stated, "'CMDICB' means the Cannabinoid MDI Certification Board, which was established to ensure manufacturers producing cannabinoid based metered dose products understand the potential public health and safety risks associated with delivering a medication in an aerosolized, inhalable format." Rapid repeated the

3

same or similar claims in Forms S-1 and S-1/A filed with the SEC in 2021 and 2022, Forms 10-K filed with the SEC in 2022 and 2023, and multiple Forms 10-Q filed with the SEC from May 2022 through August 2023. Schmidt signed Rapid's Forms S-1 and S-1/A and certified Rapid's Forms 10-K, 10-K/A, 10-KT, and 10-Q as the Company's principal executive officer.

11. Rapid's statements (discussed in paragraphs 9 and 10 above) conveyed the false impression that an industrywide organization had certified the Company's compliance with manufacturing standards relating to public health and safety. But, in fact, a Schmidt business associate—who owned Rapid shares—simply invented the CMDICB and unilaterally conferred the so-called certification upon Rapid. Rapid never applied for any such certification, and Schmidt conducted no due diligence on the business associate, the CMDICB, or its certification process. Schmidt admitted, in sworn testimony taken in the SEC investigation that preceded the filing of this lawsuit, that "early on" he began to suspect that the CMDICB's founder was not credible and later concluded that he was a "pretty big con man." According to Schmidt, this individual, who claimed to be a physician holding a Ph.D. degree, never attended college. Despite these red flags, Rapid and Schmidt repeatedly touted the CMDICB certification to investors. Rapid and Schmidt knew, or were severely reckless in not knowing, that the claimed certification was bogus.

*Major Sales Contracts*

12. On June 23, 2020, before market opening, Rapid issued a press release, drafted and approved by Schmidt, stating that the Company had "received an order for a 100,000 unit wholesale order" of its inhalers. Rapid's share price closed that day at $0.40, five cents lower than the day before, but its trading volume increased 2,565% over the previous day's activity. The following day, Rapid's share price closed at $0.69, on even greater volume. This 72.5% price increase occurred even though the Company had issued no additional news.

13. On July 9, 2020, before market opening, Rapid issued another press release, also drafted and approved by Schmidt, with the headline, "Rapid Therapeutic Announces Major Contract is Increased by 150% to 250,000 Metered Dose Inhalers." The press release claimed that the Company had "received an additional commitment of 150,000 units under a 100,000 unit wholesale order." Rapid's share price closed that day at $1.25, a 37% increase over the previous day's closing price, and its trading volume increased 1,501%.

14. Both the June 23, 2020 and the July 9, 2020 press releases were false. The purported purchaser, an online retailer that had previously bought only 9,000 inhalers from Rapid, never ordered or entered into a contract to purchase any additional inhalers. Rapid and Schmidt knew, or were severely reckless in not knowing, that both press releases were false.

### *World-Class Laboratory*

15. On June 22, 2020, Rapid issued a press release, drafted and/or approved by Schmidt, attaching a Rapid-funded analyst report that highlighted the market advantages for companies that manufacture their products according to ISO 13485—the international standard containing a comprehensive quality management system for the design and manufacture of medical devices. According to the analyst report, Rapid would need ISO 13485 certification to execute its plan "to target big box retailers such as Wal-Mart, CVS, Walgreens, Target, and Boots," which required the certification.

16. Less than two months later, on August 18, 2020, Rapid issued another press release with the headline "Rapid Therapeutic Announces Completion of New ISO 13485 Laboratory." Schmidt admitted, in sworn testimony taken in the SEC investigation that preceded the filing of this lawsuit, that Rapid never had an ISO 13485 laboratory and that the press release's claim was "an untrue statement, straight up." Schmidt stated that he must have had a "brain fart" when he drafted the press release. On August 18, 2020, Rapid's stock price rose

5

40%, increasing from $0.81 at the previous day's close to $1.14, and its trading volume tripled. Rapid and Schmidt knew, or were severely reckless in not knowing, that the August 18, 2020 press release—particularly when read against the backdrop of the June 22, 2020 press release and analyst report—was false and misleading.

### *Chief Science Officer*

17. In its Forms S-1 and S-1/A filed with the SEC in 2021 and 2022, its Form 10-KT filed with the SEC in 2021, and its Forms 10-K filed with the SEC in 2022 and 2023, all signed or certified by Schmidt, the Company referred to Rapid's CSO as a "significant employee" and the person "in charge of laboratory operations." Rapid's SEC filings further claimed that its CSO had "received a Bachelor's degree in Electrical Engineering Technology from Pacific University in 1997 and a Ph.D. degree in Electrical Engineering Technology from Ashbourne University in 2004." Moreover, on January 26, 2021, Rapid issued a press release stating that its CSO had worked for the last five years as a "consulting engineer for multiple laboratory equipment manufacturers in both 'Big Pharma' and the hemp industry."

18. However, Rapid's CSO never held an engineering degree or license and never received a bachelor's degree in any academic discipline; and he received his "Ph.D." from an unaccredited diploma mill. Schmidt admitted, in sworn testimony taken in the SEC investigation that preceded the filing of this lawsuit, that the CSO "was clearly more of a salesman" and that it was Schmidt's decision to refer to him as a consulting engineer. Schmidt selected this title based on the CSO's purported product knowledge as a salesman, and not due to any academic credentials or licenses. Rapid and Schmidt knew, or were severely reckless in not knowing, that the CSO's background and qualifications, as described in Rapid's SEC filings and press release, were false and misleading.

*FDA Warning Letter*

19. In September 2021, Schmidt stated in a "Corporate Overview" disseminated to Rapid's investors that "RTSL's MDI are a safe replacement for vape pens and delivers [sic] a 98% bioavailable dose of CBD directly to the systemic blood stream." Schmidt added that "[a]ll of our product lines focus on safe, legal, and effective active pharmaceutical ingredients." But the document omitted to state that the U.S. Food and Drug Administration ("FDA") had issued a December 2020 warning letter to an online retailer—the same retailer referred to above in paragraphs 12 through 14 in connection with Rapid's false purchase order press releases—concerning the legality and safety of Rapid's inhalers.

20. The FDA letter warned that "introducing or delivering [Rapid's inhalers] for introduction into interstate commerce violates the FD&C Act." The FDA letter further stated:

> This product is particularly concerning to the agency because the ingredients and potential impurities in oral inhalation sprays may trigger laryngospasm and bronchospasm and may be toxic to the tissues in the upper or lower airways. Inhalation products that are intended to act locally in the respiratory system also may be absorbed and exert undesirable systemic effects, such as increased heart rate or elevated blood pressure.

21. In or around December 2020, Schmidt learned of the FDA's concerns when Rapid's vice president informed him of the letter's existence and its warnings. Rapid and Schmidt knew, or were severely reckless in not knowing, that the Company's September 2021 claims regarding the safety and legality of its inhalers—particularly when read against the backdrop of the FDA's December 2020 warning letter—were false and misleading.

*Nasdaq Listing*

22. On September 27, 2021, Rapid submitted a stock listing application to the Nasdaq Stock Market. On March 4, 2022, Schmidt emailed to Rapid's investors a "Corporate Overview" stating, "[A]ll requirements met to 'uplist' to Nasdaq except pricing as of 3/4/2022." By

7

November 21, 2022, Rapid's website also claimed that the Company had been "approved for up list to Nasdaq pending pricing requirements being met."

23.     However, Nasdaq never approved, even conditionally, the listing of Rapid's shares. According to Nasdaq, Rapid "did not fully respond to Nasdaq's first and only comment letter, and as such the listing application remains pending." Schmidt admitted, in sworn testimony taken in the SEC investigation that preceded the filing of this lawsuit, that he knew that Rapid had not received approval from Nasdaq. Rapid and Schmidt knew, or were severely reckless in not knowing, that the Company's claims regarding the Nasdaq listing—which Schmidt drafted and disseminated to investors—were false.

## Rapid Sold Securities in Unregistered Transactions

24.     From at least February 2020 through May 2021, Rapid engaged in unregistered stock offerings, raising at least $2.1 million from 51 investors in 15 states. During this period, Rapid filed three notices of exempt offering on SEC Form D, claiming that the transactions were exempt from registration pursuant to Securities Act Regulation D, Rule 506(b). The Securities Act Rule 506(b) safe harbor is available only if an offering does not involve general solicitation or advertising.

25.     In at least the first offering, in which the Company raised $1,270,000 from 42 individuals, Schmidt solicited investors in live and virtual presentations and at an in-person industry trade show in Nevada. Rapid's vice president also solicited trade show attendees and other individuals, with whom he had no substantive relationship, in chance public encounters. Many of the investors who bought shares of Rapid stock in the unregistered offering were unaccredited; and Rapid took no steps to verify that the investors who claimed to be accredited were, in fact, so.

**Schmidt Sold Rapid Stock in a Private Transaction**

26. In a private transaction in December 2020, Schmidt sold Rapid stock to an entity controlled by a client of his law firm. Schmidt offered his own personal shares and received $1.15 million in exchange for them. By the time of this sale, Rapid and Schmidt had publicly disseminated several false and misleading statements (discussed in paragraph 9 and paragraphs 11 through 16 above) concerning Rapid's business.

**FIRST CLAIM FOR RELIEF**

**Rapid and Schmidt Violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5]**

27. The SEC realleges and incorporates by reference each and every allegation contained in the paragraphs above.

28. By engaging in the acts and conduct alleged herein, Rapid and Schmidt, directly or indirectly, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, knowingly or with severe recklessness:

    (a) employed a device, scheme, or artifice to defraud; and/or

    (b) made an untrue statement of material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    (c) engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

29. By reason of the foregoing, Rapid and Schmidt violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Rapid and Schmidt Violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

30. The SEC realleges and incorporates by reference each and every allegation contained in the paragraphs above.

31. By engaging in the acts and conduct alleged herein, Rapid and Schmidt, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

    (a)    knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

    (b)    knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    (c)    knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

32. By reason of the foregoing, Rapid and Schmidt violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

### Rapid and Schmidt Violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)]

33. The SEC realleges and incorporates by reference each and every allegation contained in the paragraphs above.

34. By engaging in the acts and conduct alleged herein, Rapid and Schmidt, directly or indirectly:

   (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect;

   (b) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

   (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

35. There were no applicable exemptions from registration.

36. By reason of the foregoing, Rapid and Schmidt violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### FOURTH CLAIM FOR RELIEF

**Rapid Violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)]
and Exchange Act Rules 12b-20, 13a-1, and 13a-13
[17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13]**

37. The SEC realleges and incorporates by reference each and every allegation contained in the paragraphs above.

38. Rapid is an issuer of securities registered under Section 12 of the Exchange Act that filed required reports with the SEC under Section 13(a) of the Exchange Act and related rules and regulations.

39. By engaging in the conduct described above, Rapid failed to file annual and quarterly reports with the SEC that were true and correct and failed to include material information in its required statements and reports as was necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

40. By reason of the foregoing, Rapid violated, and unless enjoined will continue to violate, Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

### FIFTH CLAIM FOR RELIEF

**Schmidt Aided and Abetted Rapid's Violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13]**

41. The SEC realleges and incorporates by reference each and every allegation contained in the paragraphs above.

42. As set forth above, by its conduct alleged herein, Rapid violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

43. Schmidt, knowingly or recklessly, provided substantial assistance to Rapid in committing its violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

44. By reason of the foregoing, Schmidt aided and abetted Rapid's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1,

and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13], and unless enjoined will continue to aid and abet such violations.

## SIXTH CLAIM FOR RELIEF

### Schmidt Violated Exchange Act Rule 13a-14
### [17 C.F.R. § 240.13a-14]

45.     The SEC realleges and incorporates by reference each and every allegation contained in the paragraphs above.

46.     On the following dates, acting under Section 302 of the Sarbanes-Oxley Act of 2002 and Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14], Schmidt certified annual and quarterly reports filed with the SEC by Rapid: June, 29, 2020 (Form 10-K), August 27, 2020 (Form 10-K/A), March 16, 2021 (Form 10-KT), March 16, 2022 (Form 10-K), May 11, 2022 (Form 10-Q), August 12, 2022 (Form 10-Q), November 10, 2022 (Form 10-Q), March 30, 2023 (Form 10-K), May 12, 2023 (Form 10-Q), and August 14, 2023 (Form 10-Q).

47.     By engaging in the acts and conduct alleged herein, Schmidt filed or caused to be filed on Rapid's behalf annual and quarterly reports on Forms 10-K, 10-K/A, 10-KT, and 10-Q, which contained certifications signed by Schmidt as Rapid's principal executive officer pursuant to Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14] and included untrue statements of material fact, or failed to include, in addition to the information required to be stated in such certification, such further material information as was necessary to make the required statements, in light of the circumstances under which they were made, not misleading, or failed to disclose information required to be disclosed therein.

48.     By reason of the foregoing, Schmidt violated, and unless enjoined will continue to violate, Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

## JURY DEMAND

49. The SEC hereby demands a trial by jury.

## PRAYER FOR RELIEF

THEREFORE, the SEC respectfully requests that the Court enter a Final Judgment that:

A. Permanently enjoins Defendants Rapid and Schmidt from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5];

B. Permanently enjoins Defendants Rapid and Schmidt from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

C. Permanently enjoins Defendants Rapid and Schmidt from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)];

D. Permanently enjoins Defendant Rapid from violating Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13];

E. Permanently enjoins Defendant Schmidt from aiding or abetting any violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13];

F. Permanently enjoins Defendant Schmidt from violating Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14];

G. Permanently enjoins Defendant Schmidt from directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

H. Permanently enjoins Defendant Schmidt from participating in any offering of a penny stock, including acting as a promoter, finder, consultant, agent, or other person who

engages in activities with a broker, dealer, or issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to induce the purchase or sale of any penny stock under Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)];

   I. Permanently bars Defendant Schmidt, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 2l(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

   J. Orders Defendants Rapid and Schmidt to disgorge all ill-gotten gains received as a result of the violations alleged herein, plus prejudgment interest on those amounts, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

   K. Orders Defendants Rapid and Schmidt to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]; and

   L. Grants such further relief as the Court deems just and proper.

Date: September 18, 2023         Respectfully submitted,

/s/ *Jason J. Rose*
JASON J. ROSE
Texas Bar No. 24007946
SECURITIES AND EXCHANGE
COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
(817) 978-1408 (jjr)
(817) 978-4927 (facsimile)
rosej@sec.gov

ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION